UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.

GREGORY WILLSON a/k/a Flip,

Defendant.

---



**DECISION AND ORDER**

1:15-CR-00142 EAW

## **INTRODUCTION**

Facing 105 years in mandatory minimum sentences if convicted on all charges in this racketeering case involving a violent motorcycle club, defendant Gregory Willson a/k/a Flip ("Defendant" or "Mr. Willson") elected to enter into a plea agreement providing for an agreed-upon 15-year prison sentence pursuant to Fed. R. Crim. P. 11(c)(1)(C). Then, after his co-defendants' trial commenced, Defendant began expressing misgivings about his decision. The Court held repeated conferences with Defendant to address his concerns, after which Defendant consistently retracted any expressed intent to withdraw his guilty plea. Then, on the same date that the jury returned guilty verdicts in the trial of his co-defendants, Defendant told the Court that he wanted to withdraw his guilty plea, and over a month later, with new counsel appointed for the purpose of pursuing a motion, Defendant filed a motion to withdraw his guilty plea—some seven months after pleading guilty. (Dkt. 1319). Because Defendant has failed to establish any genuine basis—much less a fair and just reason—for withdrawing his plea, the motion is denied.

## BACKGROUND

Defendant was charged in 18 counts of a 46-count Second Superseding Indictment with various crimes, including a RICO[1] conspiracy in violation of 18 U.S.C. § 1962(d), firearm offenses in violation of 18 U.S.C. § 924(c), various narcotics offenses, crimes in violation of the Hobbs Act, 18 U.S.C. § 1951(a), and various VICAR[2] counts, pertaining to the operation of the Kingsmen Motorcycle Club (hereinafter "KMC"). (Dkt. 33). Defendant was one of 16 defendants[3] named in the Second Superseding Indictment, but he was the only defendant charged in the original Indictment and Superseding Indictment. (Dkt. 1; Dkt. 11).

By Order entered January 17, 2017, a trial date of January 16, 2018, was set in this case. (Dkt. 445). A Pretrial Order was entered on August 21, 2017, setting December 1, 2017, as the deadline for various pretrial submissions. (Dkt. 739). In accordance with the schedule set by the Court, Defendant filed a motion for severance on September 15, 2017 (Dkt. 782), and at an appearance on October 24, 2017, the Court denied that motion and announced that Defendant would be tried as part of the main trial (*see* Dkt. 998).

On November 30, 2017, with his trial date approaching, Defendant elected to enter into a plea agreement with the Government. (*See* Dkt. 893 (Plea Agreement); Dkt. 1302

---

[1] "RICO" refers to the Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§ 1961-1968.

[2] "VICAR" refers to the Violent Crimes in Aid of Racketeering Activity statute, codified at 18 U.S.C. § 1959.

[3] Each of the other 15 defendants has been convicted, either through trial or plea.

(Transcript of Plea Hearing)). Defendant agreed to plead guilty to Counts 1, 8, and 9 of the Second Superseding Indictment, which charged violations of 18 U.S.C. § 1962(d) (Count 1) and 18 U.S.C. § 922(g)(1) (Counts 8 and 9). (Dkt. 893 at ¶ 1). The plea agreement was made pursuant to Rule 11(c)(1)(C), with the understanding that if the Court rejected the agreed-upon prison sentence of 180 months (calculated in the plea agreement as a below-guideline sentence), then Defendant could withdraw his plea. (*Id.* at ¶ 18).

On November 30, 2017, the Court placed Defendant under oath and questioned him concerning his understanding of the terms of the plea agreement and his decision to enter into the plea. (*See* Dkt. 1302). Defendant confirmed that he was capable of understanding the proceedings (*id.* at 4-5), that he reviewed the plea agreement with his attorney, that his attorney had answered any questions to his satisfaction, that he had read the plea agreement, that he had sufficient time to discuss the plea agreement with his attorney, and that he was satisfied with his attorney's advice and representation (*id.* at 5-6). Defendant confirmed his understanding about various provisions in the plea agreement, including the maximum potential penalties for the counts of conviction, the operation of the Sentencing Guidelines, the factors set forth at 18 U.S.C. § 3553(a), and the operation of Rule 11(c)(1)(C). (*Id.* at 6-14). Defendant also confirmed his understanding that the only basis for withdrawing his guilty plea would be if the Court rejected the agreed-upon sentence of 180 months:

> THE COURT: Now, I'm not going to tell you right now, Mr. Willson, as to whether or not I'll go along with this. I don't know if I will. Among other things, I'll have to look at the Presentence Investigation Report that I referred to earlier. But here is the deal, if, in fact, I go along with this, if, in fact, at the time of sentencing, I tell you, yes, I will impose 180 months in prison,

- 3 -

that is fifteen years in prison, then you cannot withdraw your guilty plea. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: However, if I don't go along with this, if I tell you at the time of sentencing that I'm not going to accept this, then you would be able to withdraw your guilty plea. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you have any questions for me or Mr. Eoannou up to this point?

THE DEFENDANT: No.

(*Id.* at 14; *see also id.* at 17-18).

Defendant also confirmed his understanding of the rights he was giving up by pleading guilty, including the right to continue with his plea of not guilty and proceed to a jury trial; the right to various trial rights including the right to counsel and the right to testify or not testify; the right to appeal or collaterally attack any sentence within or below a specified range; and the right to contest the forfeiture of certain firearms and ammunition. (*Id.* at 14-22).

In addition, the following exchange occurred during the plea hearing:

THE COURT: Have any other promises been made to you, Mr. Willson, to get you to plead guilty, other than those that are contained in this plea agreement?

THE DEFENDANT: No.

THE COURT: Has anyone coerced you or threatened you in any way to get you to plead guilty?

THE DEFENDANT: No.

THE COURT: Are you pleading guilty because, based on your discussions with your attorney, you believe it's in your best interest to do so?

THE DEFENDANT: Yes.

THE COURT: Are you pleading guilty because you are guilty.

THE DEFENDANT: Yes.

THE COURT: Have you answered my questions truthfully?

THE DEFENDANT: Yes.

THE COURT: Do you have any question for me or Mr. Eoannou?

THE DEFENDANT: No.

(*Id.* at 23-24). Then, before Defendant signed the plea agreement, the Court asked him whether the two concluding paragraphs of the plea agreement were accurate, and whether he was entering into the plea agreement in a knowing, voluntary and intelligent manner, and Defendant responded in the affirmative:

> THE COURT: Okay. What I want to do is turn to the last numbered paragraph of the plea agreement. It's paragraph 31. Do you have it there?
>
> MR. EOANNOU: We do.
>
> THE COURT: I'll read this into the record, Mr. Willson. You can follow along on your copy, but after I read it, I'm going to ask you whether or not it's true. I want you to listen to me as well. It states as follows: This plea agreement represents the total agreement between the defendant, Gregory Willson, and the government. There are no promises made by anyone other than those contained in this agreement, this agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant. Is that true?
>
> THE DEFENDANT: Yes.
>
> THE COURT: I'm going to do the same thing with the paragraph underneath Mr. Tripi's signature block there. It states as follows: I have read

this agreement which consists of sixteen pages. I have had a full opportunity to discuss this agreement with my attorney, Thomas J. Eoannou, Esq. I agree that it represents the total agreement reached between myself and the government, no promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my pleas of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will. Is that true, Mr. Willson?

THE DEFENDANT: Yes.

THE COURT: All right. The next step then is for you to sign the plea agreement. Understand before you sign it understand when you sign this you're telling me in writing that you fully understand all of the terms and conditions and that you're entering into it in a knowing, voluntary and intelligent manner; is that true?

THE DEFENDANT: Yes.

THE COURT: Then I ask you to sign the plea agreement now.

(*Id.* at 24-25).

In addition, Defendant's attorney explained during the plea hearing that they had received the plea agreement about 10 days before the plea hearing; that he had reviewed it with Defendant at Defendant's place of incarceration; that Defendant objected to some of the language in the factual basis of the plea agreement that was later revised by the Government; and then Defendant's attorney reviewed the plea agreement with Defendant again on two additional occasions. (*Id.*). Defendant acknowledged that his attorney's explanation was correct, and that the factual information contained in paragraphs 5A through M of the plea agreement was correct. (*Id.* at 26). The Government summarized the factual information that served as the basis for the plea, and Defendant agreed that the

this agreement which consists of sixteen pages. I have had a full opportunity to discuss this agreement with my attorney, Thomas J. Eoannou, Esq. I agree that it represents the total agreement reached between myself and the government, no promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my pleas of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will. Is that true, Mr. Willson?

THE DEFENDANT: Yes.

THE COURT: All right. The next step then is for you to sign the plea agreement. Understand before you sign it understand when you sign this you're telling me in writing that you fully understand all of the terms and conditions and that you're entering into it in a knowing, voluntary and intelligent manner; is that true?

THE DEFENDANT: Yes.

THE COURT: Then I ask you to sign the plea agreement now.

(*Id.* at 24-25).

In addition, Defendant's attorney explained during the plea hearing that they had received the plea agreement about 10 days before the plea hearing; that he had reviewed it with Defendant at Defendant's place of incarceration; that Defendant objected to some of the language in the factual basis of the plea agreement that was later revised by the Government; and then Defendant's attorney reviewed the plea agreement with Defendant again on two additional occasions. (*Id.*). Defendant acknowledged that his attorney's explanation was correct, and that the factual information contained in paragraphs 5A through M of the plea agreement was correct. (*Id.* at 26). The Government summarized the factual information that served as the basis for the plea, and Defendant agreed that the

information was true and accurate. (*Id.* at 27-34). The Court followed up with Defendant after the factual basis of the plea was summarized in open court:

> THE COURT: Let me confirm again, Mr. Willson, you have read, had input on and agreed to the final recitation of the facts that are contained in paragraphs 5 A through M, is that true?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And the information that is in there is correct?
>
> THE DEFENDANT: Yes.

(*Id.* at 34).

The Court found that Defendant was entering into the plea agreement in a knowing, voluntary, and intelligent manner; that there was a factual basis for the plea; and therefore, the Court accepted Defendant's plea. (*Id.* at 25, 35). Sentencing was scheduled for February 27, 2018. (Dkt. 892).

Then, by letter to the Court dated January 4, 2018, Defendant acknowledged that he had agreed to the terms of the plea agreement but expressed concerns about certain DNA tests. (Dkt. 1362). The Government responded on January 29, 2018. (Dkt. 1026; Dkt. 1028). To address the issues raised by Defendant's letter, a status conference was held before the undersigned on February 1, 2018. (Dkt. 1035). At that status conference, Defendant's counsel explained that he wrote a memorandum to Defendant about the DNA reports; he had spent almost 30 hours since November 6, 2017, with Defendant discussing the reports and the plea agreement; and Defendant's concerns had been resolved. Defendant agreed, acknowledging that he was not asking the Court for any relief; that he

was satisfied with his counsel's representation and his communications to address his concerns; and that he had no further questions for the Court or his attorney.[4]

In the meantime, on January 16, 2018, jury selection commenced in the main trial (in which Defendant would have been tried). (Dkt. 1004). Ultimately, three defendants elected to proceed to trial (David Pirk, Andre Jenkins and Timothy Enix).

At the request of the Probation Department, and with no objection from defense counsel, Defendant's sentencing was rescheduled to March 27, 2018. (Dkt. 1038). The initial presentence investigation report was filed on February 20, 2018. (Dkt. 1095). One week later, Defendant wrote another letter to the Court. (*See* Dkt. 1332-6). At this point, proof was well underway in the main trial.

In his February 27, 2018, letter, Defendant indicated that he wanted to "reject the plea offer completely and proceed to trial" and that he pleaded guilty because he feared being convicted at trial and facing a significant penalty. (Dkt. 1332-6). The Government responded to that letter by email dated March 6, 2017 (Dkt. 1332-7), outlining the discovery provided to the defense and the lack of merit to Defendant's claims.

A status conference was held on March 12, 2018, at which time Defendant expressed concerns about his name and alleged conduct being mentioned during the trial of Mr. Pirk, Mr. Enix, and Mr. Jenkins. Defendant's attorney asked for more time to discuss the matter with his client. A further status conference was held on March 20, 2018,

---

[4] A transcript of this proceeding has not been prepared, and therefore the Court's recitation of the proceedings on February 1, 2018, is based on its notes. Of course, if the transcript differs in any way from the Court's recitation, the transcript controls.

at which time Defendant stated that he wanted to go forward with sentencing and was not seeking to withdraw his plea.[5] Defendant's sentencing was rescheduled to April 10, 2018. (Dkt. 1142).

Defendant was not prepared to go forward with sentencing on April 10, 2018 (Dkt. 1192), and it was rescheduled to May 18, 2018 (Dkt. 1225), at which time Defendant said that he wanted to withdraw his plea. The Court set a deadline for Defendant to do so. (*See* Dkt. 1267). Defendant's attorney confirmed that the decision was against his advice, but Defendant was instructing him to file a motion to withdraw the plea. (*Id.* at 2-3, 5-6). At that appearance, Defendant's attorney confirmed that he spent almost 30 hours with Defendant discussing the plea agreement, and for security reasons, he did not the leave the plea agreement at the jail. (*Id.* at 9). He also confirmed, as he had during the plea hearing, that language in the factual basis of the plea agreement was changed at Defendant's request. (*Id.* at 10).

At an appearance on June 15, 2018, it was agreed that other counsel should be appointed to represent Defendant in connection with his motion to withdraw his plea because of the allegations he was making concerning his attorney. With Defendant's consent, new counsel accepted a limited assignment related to the attempted plea withdrawal, and by motion filed on June 25, 2018, an application was made by Defendant to withdraw his plea. (Dkt. 1319).

---

[5] Again, transcripts of the court proceedings on March 12 and 20, 2018, have not been prepared, and the recitation of the proceedings is based on the Court's notes. In the event that the transcripts differ in any respect, the transcripts control.

Defendant does not contend that the Court did not comply with Rule 11. (*See* Dkt. 1320 at 2). Rather, Defendant contends that his plea was not entered knowingly, explaining as follows:

> The Defendant maintains that he was never provided with a copy of the Plea Agreement prior to the entry of his guilty plea. Moreover, the Defendant maintains he never read the Plea Agreement prior to signing it and pleading guilty. The Defendant maintains that he is innocent of the portions of the factual basis contained in the Plea Agreement which alleged that he engaged in drug dealing, gun running or that he punched a woman. (DKT#893 at 3-9).
>
> The Defendant maintains that he signed the Plea Agreement and affirmatively answered the court's questions during the plea colloquy on the advice of his attorney and without being aware of the allegations contained in the factual basis set forth above.

(Dkt. 1319 at ¶¶ 7-8). Defendant's allegations were made in a declaration from his attorney. (*Id.*). The Government filed a response in opposition to the motion. (Dkt. 1332). Oral argument was held on July 5, 2018, at which time the Court reserved decision.

## ANALYSIS

After acceptance of a plea but before imposition of the sentence, a district court has the discretion to allow a defendant to withdraw his plea of guilty if "the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). The decision to allow a guilty plea to be withdrawn is committed to the discretion of the district court. *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005). A defendant seeking to withdraw his guilty plea bears the burden to establish that the requested relief should be granted. *United States v. Hirsch*, 239 F.3d 221, 225 (2d Cir. 2001); *see United*

*States v. Maher*, 108 F.3d 1513, 1529 (2d Cir. 1997) ("The defendant bears the burden of showing that there are valid grounds for relief.").

"A guilty plea is no mere formality, but a 'grave and solemn act.'" *Arteca*, 411 F.3d at 319 (quoting *United States v. Hyde*, 520 U.S. 670, 677 (1997)). As a result, the burden to withdraw a plea is high. As explained by the Second Circuit:

> The standard for withdrawing a guilty plea is stringent because "society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice."

*United States v. Schmidt*, 373 F.3d 100, 103 (2d Cir. 2004) (quoting *Maher*, 108 F.3d at 1529); *see United States v. Gonzalez*, 647 F.3d 41, 57 (2d Cir. 2011) ("Whatever the basis for the motion, the standard for withdrawing a guilty plea is stringent." (internal quotation marks and alteration omitted)).

"The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *Maher*, 108 F.3d at 1529 (quoting *United States v. Gonzalez*, 970 F.2d 1095, 1100 (2d Cir. 1992)). Similarly, "a defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw [his] guilty plea." *Gonzalez*, 647 F.3d at 56 (internal citations omitted). Instead, "[t]o get permission to withdraw a guilty plea, a defendant must raise a significant question about the voluntariness of the original plea." *United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997).

The Second Circuit has endorsed consideration of three factors when evaluating a motion to withdraw a guilty plea: (1) whether the defendant is asserting his legal innocence; (2) the length of time between the plea and motion to withdraw; and (3) any prejudice that would inure to the government in the event the motion is granted. *See, e.g., United States v. Rose*, 891 F.3d 82, 85 (2d Cir. 2018); *United States v. Schmidt*, 373 F.3d 100, 102 (2d Cir. 2004). Here, consideration of each factor necessitates denial of Defendant's motion.

## I. DEFENDANT'S CONCLUSORY CLAIM OF LEGAL INNOCENCE IS NOT FACTUALLY SUPPORTED.

"The burden of a defendant who has been convicted after pleading guilty, and who contends thereafter that he should be allowed to withdraw his plea because he is innocent, is plainly no less heavy" than the burden on a defendant who seeks to challenge his conviction after a jury verdict. *Maher*, 108 F.3d at 1530. Here, Defendant has wholly failed to meet that standard.

Defendant bases his claims of innocence on the unsupported statements contained in his counsel's declaration submitted in support of the motion to withdraw. (Dkt. 1319 at ¶ 7 ("The Defendant maintains that he is innocent of the portions of the factual basis contained in the Plea Agreement which allege that he engaged in drug dealing, gun running, or that he punched a woman.")). Yet Defendant's admissions under oath during his plea directly contradict those conclusory claims of innocence. (*See* Dkt. 1302 at 28-29 (admitting to punching Victim A repeatedly and injuring her); *id.* at 30-31 (admitting that evidence links him to the controlled substances and firearms found during execution of search warrants); *id.* at 32-33 (admitting to involvement with Springville chapter shutdown

on June 7, 2013); *id.* at 33-34 (admitting to involvement with Springville drive-by shooting on August 3, 2013)). Similarly, the plea agreement itself contains Defendant's admissions to this same information (Dkt. 893 at ¶ 5), and Defendant admitted under oath that he provided input concerning the language that was ultimately included in the factual basis of the plea agreement (Dkt. 1302 at 26; *see also* Dkt. 1332-1 at ¶ 15 (Government's description of changes made to plea agreement's factual basis based on Defendant's input)).

"The self-inculpatory statements [a defendant] . . . made under oath at his plea allocution 'carry a strong presumption of verity,' . . . and the court, in reviewing the belated claims of innocence, must draw all permissible inferences in favor of the government and against the defendant. . . ." *Maher*, 108 F.3d at 1530. "A claim of innocence can be a basis for withdrawing a guilty plea, but the claim must be supported by evidence. 'A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea.'" *Hirsch*, 239 F.3d at 225; *see, e.g., United States v. Cruz*, 528 F. Supp. 2d 151, 155 (W.D.N.Y. 2007) (answers provided by a defendant during Rule 11 hearing are an "especially important consideration" when evaluating motion to withdraw plea, as those answers are "binding" and "a defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw the guilty plea" (internal quotation marks omitted)).

In addition to Defendant's admissions as part of the plea proceeding, the proof presented during the trial of Mr. Pirk, Mr. Jenkins, and Mr. Enix established beyond any doubt, as far as the Court is concerned, that Defendant assaulted Victim A, that he

trafficked in drugs, and that he unlawfully possessed firearms. The credible evidence presented at trial, including the testimony from Victim A and Defendant's former girlfriend, Rebecca Vosburgh, left no room for doubt, let alone reasonable doubt, about Defendant's criminal conduct. In addition, Defendant made various incriminating statements, including during consensually recorded telephone calls (Dkt. 1332-1 at ¶¶ 7-8), and his own mother (Donna Abdo) incriminated him when she testified before the grand jury that Defendant hid Victim A at their home because she was beaten and injured (Dkt. 1332-9 at 26).

Put simply, Defendant is guilty. Defendant beat Victim A, he trafficked in narcotics, and he possessed firearms in furtherance of his illegal activities. Defendant engaged in a RICO conspiracy through his active participation in the KMC, and he unlawfully possessed firearms because he was previously convicted of various felonies, including a felony in this Court. Defendant's conclusory proclamations of his innocence, in direct conflict with his sworn statements during the plea hearing and contrary to the overwhelming evidence in this case, are wholly insufficient to meet his burden to withdraw his plea.

## II. DEFENDANT'S REQUEST TO WITHDRAW HIS PLEA IS UNTIMELY.

Here, Defendant pleaded guilty on November 30, 2017—the day before his pretrial submissions were due and as the trial in this case was approaching. The first time Defendant even referenced wanting to withdraw his plea was in a letter to the Court dated February 27, 2018—almost three months after his guilty plea. Moreover, although that letter and subsequent communications with the Court expressed concerns about the soundness of Defendant's plea decision, Defendant ultimately and persistently elected <u>not</u>

to seek to withdraw his plea for many months. It was not until a court proceeding on May 18, 2018, when Defendant unequivocally voiced his decision to withdraw his plea. The actual motion was followed the following month, on June 25, 2018, once new counsel was appointed to represent Defendant with his motion.

This delay of six to seven months in reaching a decision to withdraw the plea undermines Defendant's motion. Indeed, "the longer the elapsed time, the less likely withdrawal would be fair and just." *Schmidt*, 373 F.3d at 102. Here, because of the lapse of time, it would be unfair and unjust for the Court to allow Defendant to withdraw his plea.

### III. NOT ONLY HAS DEFENDANT FAILED TO ESTABLISH A SUFFICIENT BASIS TO WITHDRAW HIS PLEA, BUT EVEN IF HE HAD, THE PREJUDICE TO THE GOVERNMENT OUTWEIGHS ANY JUSTIFICATION OFFERED BY DEFENDANT.

Only if a defendant establishes that there is a valid basis to grant a motion to withdraw a guilty plea is a court required to consider whether the government has established prejudice, "and then the court must exercise its discretion in balancing these competing concerns." *Maher*, 108 F.3d at 1529; *see Hirsch*, 239 F.3d at 225 ("[A] court should consider the potential prejudice to the government, but only if the defendant has set forth sufficient grounds to withdraw the plea."); *Torres*, 129 F.3d at 715 ("[T]he government need not demonstrate prejudice where the defendant fails to show sufficient grounds to justify withdrawal of the plea."); *Gonzalez*, 970 F.2d at 1100 ("The Government is not required to show prejudice when opposing a defendant's motion to withdraw a guilty plea where the defendant has shown no sufficient grounds for permitting withdrawal;

however, the presence or absence of such prejudice may be considered by the district in exercising its discretion.").

Here, Defendant has failed to present a valid basis for the withdrawal of his plea. Not only are his conclusory claims of innocence patently insufficient and unsupported by the record in this case, but Defendant's argument that his attorney somehow coerced him into pleading guilty is incredible. The record establishes that Defendant's counsel devoted significant time and attention to representing Defendant in this case, and, as previously expressed during proceedings in this case, this Court's view is that Defendant's counsel achieved an exceedingly generous resolution for his client. Defendant benefited from excellent representation by his assigned counsel, and his attempt to now claim that the same counsel somehow coerced him into entering into the plea is wholly unsupported by the record in this case.

It was ultimately not until May 18, 2018, that Defendant unequivocally expressed his desire in open court to withdraw his plea. That was the same date that, after four months of trial, the jury's guilty verdicts were returned against Mr. Pirk, Mr. Jenkins, and Mr. Enix. According to the Government, all of the witnesses who were called to testify during the trial (over 60 in total) are the same witnesses who would have been called to prove the case against Defendant. (Dkt. 1332-1 at ¶ 31). Moreover, even if the Court analyzes the prejudice from February 27, 2018 (the date of Defendant's letter first expressing a desire to withdraw his plea), at that point the trial jury had been selected and the trial was well underway. (*See id.* at ¶ 47). Moreover, all defendants in this case have now been convicted (either through trial or plea). To allow Defendant to withdraw his plea and proceed to trial

would significantly prejudice the Government, which would essentially have to redo a trial that has already consumed the better part of this year.

## CONCLUSION

For the foregoing reasons, Defendant's motion to withdraw his guilty plea (Dkt. 1319) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: August 9, 2018
Rochester, New York